﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/20 Archive Date: 04/30/20

DOCKET NO. 190805-16385
DATE: April 30, 2020

ORDER

Entitlement to service connection for coronary artery disease (CAD) is granted.

FINDING OF FACT

1. The weight of the evidence shows that the Veteran served along the perimeters of Korat and Takhli Royal Thai Airforce Bases. 

2. The Veteran has a current diagnosis of coronary artery disease that has manifested to a degree of 10 percent disabling or more. 

CONCLUSION OF LAW

The criteria for entitlement to service connection for coronary artery disease have been met. 38 U.S.C. §§ 1110, 1116, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from June 1959 to June 1985.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. 

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a March 2019 rating decision by the Regional Office (RO) of the Department of Veterans Affairs (VA). In August 2019 the Veteran submitted an AMA notice of disagreement and elected the direct review docket. 

Entitlement to service connection for coronary artery disease (CAD).

The Veteran asserts that he was exposed to herbicide agents while serving in Thailand, and that this exposure is causally related to his current diagnosis of CAD. 

Service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Consistent with this framework, service connection is warranted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Certain diseases associated with exposure to herbicide agents will be presumed to have been incurred in service even though there is no evidence of that disease during the period of service at issue, including CAD. These diseases must manifest to a degree of 10 percent or more at any time after service for the presumption to apply. 38 U.S.C. § 1116(a); 38 C.F.R. §§ 3.307(a)(6), 3.309(e). 

The Board concludes that the Veteran has a current disability that is causally related to exposure to herbicide agents while serving in Thailand. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

The Veteran served in Thailand at Korat and Takhli Royal Thai Air Force Bases (RTAFB) from February 1967 to October 1967. (12/12/2003, Military Personnel Record, p. 7). His military records do not indicate that he served in Vietnam, and therefore exposure to herbicide agents cannot be presumed in accordance with 38 C.F.R. § 3.307(a)(6)(iii). However, exposure can be shown on a facts-found basis. 

Based on a 1973 DOD report titled “CHECO Southeast Asia Report: Base Defense in Thailand 1968-1972,” the Board acknowledges that herbicides were used along the perimeters of RTAFBs, to include Korat and Takhli. (2/13/2019, Correspondence, p. 2). As the use of herbicides in Thailand was limited to the perimeters of RTAFBs, the Board must determine if the Veteran served along the perimeter of the base. 

In this regard, the Veteran’s DD-214 indicates that his military occupational specialty was “aircraft maintenance technician.” The Veteran has provided lay evidence that he primarily worked at the flight line at Korat and Takhli, which was located near the perimeter of the base. Additionally, he asserts that his living quarters were within 300 meters of the perimeter. The Veteran has provided maps of Korat RTAFB that supports his assertion that living quarters were in close proximity to the perimeter. 

The Veteran asserts that, when sprayed using hand-operated devices, herbicide agents have a 500 meter “overspray zone” were they can be effective against unintended targets. In support of his assertion, the Veteran has submitted the U.S. Department of the Army Field Manual for “Tactical Employment of Herbicides,” which does advise a 500-meter buffer distance to avoid damage to “vegetation near the target.” (2/13/2019, Correspondence, p. 7, 22).

Based on the competent and probative evidence of record, the Board finds that the Veteran served within 500-meters of the perimeter of Korat RTAFB, an area which would be affected by the ground-based tactical employment of herbicide agents. Further, based on the CHECO Report, the Board finds that the Veteran served in Thailand during a period where herbicide agents were tactically employed. Therefore, the Board concludes that the Veteran was exposed to herbicide agents while stationed in Thailand. Finally, as CAD is presumptively related to herbicide agent exposure, the Board finds that CAD incurred during the Veteran’s service in Thailand. 

With respect to the requirement that the disability manifests to a degree of 10 percent disabling or more as set forth under 38 C.F.R. § 3.307(a)(6)(ii), the Board finds that the evidence is at least in equipoise on this point. See 38 C.F.R. § 4.104 Diagnostic Code 7005. In this regard, a January 2019 VA examination found that continuous medication is required to control CAD. (1/16/2019, C&P Exam, p. 2). 

In sum, resolving all doubt in favor of the Veteran, the weight of the evidence establishes that he was exposed to herbicide agents while serving in Thailand and has a current diagnosis of CAD, a disease presumptively related to exposure to herbicide agents. Accordingly, service connection is warranted for CAD.

 

 

Eric S. Leboff

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board R. Glenn, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.